# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7267 | **DATE** | 7/1/2003 |
| **CASE TITLE** | David Hughes vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss (8-1) is granted in part and denied in part. Plaintiff's motion to strike exhibits (10-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 02 2003 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 7/1/2003 date mailed notice | |
| GL | courtroom deputy's initials | 03 JUL -1 PM 8:28 | GL | |
| | | 01 03-03 Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| David Hughes, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 02 C 7267 |
| | ) | |
| City of Chicago, | ) | |
| Quest Diagnostics, Inc., | ) | |
| and Dr. Hugh Russell, | ) | **DOCKETED** |
| | ) | |
| Defendants. | ) | JUL 0 2 2003 |

## MEMORANDUM OPINION AND ORDER

Marvin E. Aspen, District Judge:

On October 19, 2002, Plaintiff David Hughes filed an eleven count complaint against Defendants City of Chicago ("the City"), Dr. Hugh Russell, and Quest Diagnostics, Inc. ("Quest"). All eleven counts stem from Hughes' failure of the Chicago Fire Department's drug test and subsequent termination. Hughes alleges that the City is liable under 42 U.S.C. §1983 for violating Hughes' Fourth Amendment right to be free from search and seizure (count I), Fourteenth Amendment right to due process under law (count II), and Fourteenth Amendment right to equal protection under the laws (count III). Hughes also contends that the City and Dr. Russell are liable for "deliberate indifference" (counts IV and VI, respectively) and negligence (counts VII and IX, respectively). Finally, count XI alleges tortuous interference with employment contract against Dr. Russell.[1] For the following reasons, we grant in part and deny in part defendants' motion to dismiss.

---

[1] Hughes has sued Quest for deliberate indifference (Count V), negligence (Count VIII), and tortuous interference with employment contract (Count X). Quest has not filed a motion to dismiss.

1

## II. Background

In 2001, the Chicago Fire Department ("Fire Department" or "Department") hired Hughes as a candidate paramedic. For the first year of his employment with the Department, Hughes was subject to testing for substance abuse. The collective bargaining agreement between the City and the Firefighters' Union provides that "if the test results are positive the employee may be terminated and such termination shall not be subject to the grievance procedure."[2] Pursuant to the requirements of the Department, Hughes underwent random drug testing on September 24, 2001. Hughes' sample was sent to the laboratory of Defendant Quest for analysis. On September 27, 2001, Quest reported that Hughes' test result was positive for the presence of morphine. Dr. Russell reviewed and confirmed the results of Quest's report.

As a result of the positive drug test, the Department put Hughes on administrative leave. At Hughes' request, Quest re-tested Hughes' sample. On October 5, 2001, Hughes' sample was again reported positive at 418ng/ml, above the 300ng/ml standard used by the Department. Because Hughes tested positive for morphine, the Department's Personnel Board, which has final decision-

---

[2] The Defendants attached as exhibits to their motion to dismiss the collective bargaining agreement between the City and the Fire Fighters Union (Defense Exhibit A), as well as a copy of the case *Billish v. City of Chicago*, 1988 WL 130003 (N.D. Ill. 1988) (Defense Exhibit B)). The plaintiff moved to strike these exhibits under Federal Rule of Civil Procedure 12(b). We deny plaintiff's motion. We may consider judicially noticed documents without converting a Rule 12(b) motion to dismiss into a Rule 56 motion for summary judgment. *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). As both the labor agreement and case are public record, judicial notice is proper. *See id.* Furthermore, the labor contract was referred to in Hughes' complaint and is central to his due process claim. We may, therefore, consider it to be part of the pleadings. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). For these reasons we deny plaintiff's motion to strike defense exhibits A and B and consider these documents for purposes of deciding the City's motion to dismiss.

2

making authority regarding personnel actions over probationary employees, terminated Hughes from his position as candidate paramedic on October 9, 2001.

On October 9, 2002, Hughes brought an eleven count complaint against Defendants City of Chicago, Dr. Russell, and Quest Diagnostics. In January 2003, the City and Dr. Russell moved to dismiss Counts I-IV, VI, VII, IX, and XI.

## III. ANALYSIS

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied*, 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A. COUNT I: Fourth Amendment

In the first count of his complaint, which is brought under 42 U.S.C. § 1983, Hughes contends that the City denied him his Fourth Amendment right to be free from unreasonable searches.[3] Hughes does not take issue with the City's act of taking his urine sample and testing it for the

---

[3] The City argues that all Section 1983 claims against Dr. Russell should be dismissed on qualified immunity grounds, an argument with which Hughes disagrees. We do not reach the issue of whether Dr. Russell is entitled to qualified immunity, however, because we find Hughes did not assert any Section 1983 claims against Dr. Russell. Hughes complains only that the actions of the City of Chicago, not Dr. Russell, violated his constitutional rights.

3

presence of illegal substances.[4] Instead, Hughes' Fourth Amendment claim centers around the standard by which his sample was evaluated. According to Hughes, it was the City's use of a 300ng/ml standard to determine a positive result for the presence of opiates, as opposed to the 2000ng/ml standard used by other City departments and the Federal Department of Transportation, that constituted a violation of his right to be free from unreasonable searches and seizures.

To properly state a Section §1983 claim against a municipality, a plaintiff must allege a constitutional deprivation or violation of a right secured by federal law caused by a governmental policy, practice or custom. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). The injury must have been caused by an individual acting "under color of state law." To properly claim a Fourth Amendment violation, Hughes must allege that the City interfered with his reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 352, 353 (1967). Hughes' allegations that the testing standard used to report positive drug results was "outdated" and "contrary to known scientific standards" simply do not implicate the Fourth Amendment. Hughes' allegations go to the manner in which the results of the search were evaluated, not the validity of the search itself. "Having submitted urine sample to the Department ... [Hughes] no longer retained any possessory or privacy interest in the contents of those samples." *Harris v. Washington*, 1985 WL 17506, 4 (N.D. Ill. 1985); *see also Shamley v. City of Chicago*, 516 N.E.2d 646, 648 (Ill. App. Ct. 1987) ("[p]laintiffs also concede that the manner in which urine specimens are handled after they are collected has no bearing on whether the requirement that they be given is reasonable under the Fourth Amendment.") Hughes' complaint, even when viewed in the light most favorable to Hughes,

---

[4] Indeed, as a candidate paramedic, Hughes was required to engage in high-risk, safety sensitive tasks that would warrant suspicionless drug testing. *See Joy v. Penn-Harris-Madison School Corp.*, 212 F.3d 1052, 1061 (7th Cir. 2000).

does not come close to stating a claim under the Fourth Amendment. We therefore dismiss Count I of Hughes' complaint.

### B. COUNT II: Fourteenth Amendment Right to Due Process

In Count II of his complaint, Hughes seeks to hold the City liable under §1983 for violating his right to due process when it terminated his employment. Specifically, Hughes alleges that the City arbitrarily and unreasonably ignored known and accepted scientific standards for the review of opiate drug results and, in so doing, failed to follow its own internal procedures for drug testing. Hughes points to the Department's General Order 87-008, which requires the Department to "employ testing for the presence of drugs/alcohol according to procedures which ensure the accuracy and reliability of such tests." Hughes maintains that the procedures used by the Department were not accurate and reliable because the threshold level applied by the City to determine a positive result for the presence of opiates was too low.

The due process clause prohibits a state from depriving anyone of life, liberty, or property without due process of law. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985). To make out a claim for a violation of his Due Process rights, Hughes must first allege that the City deprived him of a constitutionally protected property or liberty interest. *See Polenz v. Parrott*, 883 F.2d 551 (7th Cir. 1989). To have a constitutionally protected property interest in his future employment with the Department, Hughes must have had "a legitimate claim of entitlement to it." *Board of Regents of State Colleges, et al. v. Roth*, 408 U.S. 564, 578 (1972). In determining whether Hughes had a legitimate claim of entitlement to continued employment, we must look at "existing rules or understandings that stem from an independent source such as state law – rules or

5

understandings that secure certain benefits and that support claims of entitlements to those benefits." *Id.*

Thus, in *Roth* where the plaintiff was hired by the State of Wisconsin for a period of one academic term, and his employment notice specifically provided that his employment was to terminate on a specific date, the State did not deprive the plaintiff of a constitutionally protected property interest when it failed to renew the plaintiff's contract. *Id.* In *Roth*, "the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no claim of entitlement to re-employment." *Id.* Like the respondent in *Roth*, Hughes had no entitlement to continued employment with the Department. The collective bargaining agreement specifically provided that employees were subject to drug testing for the first year of their employment and that if they failed the test they were not entitled to use the grievance procedures available to tenured employees. As a Department employee for less than a year, Hughes did not have a property interest in continued employment with the Department when he failed the drug test.

Furthermore, Hughes' Due Process claim fails because the Department's internal order requiring testing procedures that "ensure the accuracy and reliability" does not create a sufficiently firm an definite expectation as to constitute a property right. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985). Likewise, Hughes does not allege that the *procedures* employed by the City yielded an inaccurate or unreliable test result. Indeed, Hughes does not take issue with the procedure used in testing his urine, but rather with the evaluation of those results. Because Hughes does not allege a deprivation of a constitutionally protected property right we grant the City's motion as to Count II.

## C. COUNT III: Fourteenth Amendment Right to Equal Protection Under the Laws

Hughes alleges that the City violated his right to Equal Protection under the laws when it treated him, as an employee of the Fire Department, differently than other City employees whose drug samples were tested under a more lenient standard.

The Equal Protection Clause prohibits differential treatment of similarly situated individuals. *See Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) (*citing Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972)). Where the state treats similarly situated classes of individuals differently, but no fundamental right or suspect classification is involved, the classification must "bear only a rational relation to a legitimate state interest." *Wroblewski*, 965 F.2d at 459; *accord Discovery House, Inc. v. Consolidated City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003). We apply the rational basis test here because candidate paramedics employed by the Chicago Fire Department do not constitute a suspect class and governmental employment a fundamental right. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976).

In applying the rational basis test, we must assume that the Department's action is constitutional. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). We will find the governmental action unconstitutional only if it was "completely, ludicrously arbitrary." *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 341 (7th Cir. 1991). Thus, even if, as Hughes contends, the standard applied by the Fire Department was more stringent than that applied by other departments of the City, and, therefore "inappropriate," the standard does not violate the Equal Protection Clause. The Department need not choose the most "precise" or "best" standard of measuring substance abuse in order to satisfy the rational basis test. *See Murgia*, 427 U.S. at 313 ("where rationality is the test, a State does not violate the Equal Protection Clause merely because

7

the classifications made by its laws are imperfect")(citations omitted). It is completely rational for the City to apply a more strict standard in reviewing the drug tests of Fire Department employees than is applied to other City employees whose positions do not involve such high stakes or safety risks. We therefore grant Defendants' motion to dismiss Count III of Hughes' complaint.

### D. COUNTS IV and VI: Deliberate Indifference

In Counts IV and VI of his complaint, Hughes alleges that the City and Dr. Russell are liable for deliberate indifference in that they "knowingly and willfully ignored the well-accepted scientific standard for analysis and review of opiate drug test results thereby violating Plaintiff's federally guaranteed constitutionally [sic] protections." Complt. ¶¶ 40, 46. Deliberate indifference is a heightened standard for determining whether state actors are liable for violating a plaintiff's constitutional rights.[5] Deliberate indifference is not an independent cause of action. For these reasons, we dismiss counts IV and VI of Hughes' complaint.

### E. COUNTS VII and IX: Negligence

Hughes alleges that the City and Dr. Russell are liable for negligence in that they violated their duty of care to Hughes by failing to conform their "threshold level of opiate drug testing to the scientifically known and accepted standard of practice and set forth in the industry as adopted under federal guidelines." Complt. ¶ 48. In addition to the City's maintenance of too low a standard, Hughes also contends that the City was negligent in failing to "give adequate training/warning to all employees regarding the consumption of poppy seeds prior to drug testing." Hughes contends that Dr. Russell was negligent in omitting to conduct a more thorough clinical and physical assessment

---

[5]Deliberate indifference is most commonly, though not exclusively, applied to prisoner's §1983 suits for Eighth Amendment violations.

8

of Hughes, failing to render the result of his assessment of Hughes to writing, and failing to notify the City, the Fire Department, and Hughes that food consumption could have caused any positive result reported at less than 2,000ng/ml.

### 1. Local Governmental and Governmental Employees Tort Immunity Act

The City contends that Hughes' tort claims are barred by the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). The Tort Immunity Act provides that:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.
> 745 ILCS 10/2-201.

The Act further provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.

Under the Act, an employee's conduct must be both an exercise of discretion and a policy determination for immunity to attach. *See Harinek v. 161 North Clark Street, Ltd.*, 692 N.E.2d 1177, 1182 (Ill. 1998). Policy determinations are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Harinek v. 161 North Clark Street Ltd.*, 692 N.E.2d 1177, 1181 (Ill. 1998)(citing *West v. Kirkham*, 588 N.E.2d 1104 (Ill. 1994)). Discretionary acts are those which are "unique to a particular office and involve the exercise of personal deliberation and judgment in deciding whether to perform an act and in what manner the act should be performed." *Birkett v. City of Chicago*, 758 N.E.2d 25, 31 (Ill. App. Ct. 2001). A municipality and its employees are not immune for the performance of ministerial acts. *See In re Chicago Flood Litigation*, 680 N.E.2d 265 (Ill. 1997).

9

An official duty is ministerial when it is "absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for the judgment or discretion." *Id.* at 273 (quoting *City of Chicago v. Seben*, 46 N.E. 244 (1897)).

Tort immunity is an affirmative defense, *see Michigan Avenue Nat'l Bank v. County of Cook*, 732 N.E.2d 528 (Ill. 2000), for which the defendant has the burden of proof on each element. *See Leaks v. City of Chicago*, 606 N.E.2d 156 (Ill. 1992). At this stage of the litigation, Dr. Russell has not satisfied his burden of proving immunity under the Act. It is possible that Dr. Russell, as a medical doctor and Medical Review Officer for the Chicago Fire Department, was performing a function that is both discretionary and a policy determination. In deciding a motion to dismiss, however, we must construe the facts in the light most favorable to the plaintiff. Absent other evidence or allegations describing Dr. Russell's position and responsibilities, we cannot infer that Dr. Russell was exercising discretion as well as making a policy determination when he reviewed Hughes' test results. It is entirely conceivable that Dr. Russell's tasks were ministerial. Dr. Russell may have simply been responsible for administering and reporting the drug test results in accordance with a mandate from higher-ups at the Fire Department, his hands tied with regard to the standards used. We therefore cannot find Dr. Russell immune at this point in the litigation.

Our finding with regard to Dr. Russell, however, does not foreclose the possibility that the City is immune under the Act. Indeed, we may find the City immune even though we do not find an identified City employee immune. *See Birkett*, 758 N.E.2d at 31; *see also Gordon v. Degelmann*, 29 F.3d 295 (7th Cir. 1994). Because we believe that the acts and omissions resulting in the injury complained of are policy determinations that can be made only by agents and employees of the City

10

in the exercise of their discretion, we find that the City is immune from an award for damages under § 2-109.

The City is not, however, immune from Hughes' prayer for reinstatement to his position as candidate paramedic. The Tort Immunity Act provides that "[n]othing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." 745 ILCS 10-2-101. The Illinois Supreme Court has construed this provision as "excluding injunctive remedies from the requirements of the Tort Immunity Act." *In re Consolidated Objections to Tax Levies of School District 205*, 739 N.E.2d 508, 516 (Ill. 2000); *see also Romano v. Village of Glenview*, 660 N.E.2d 56, 60 (Ill. App. Ct. 1995). Hughes' negligence count against the City prays for both money damages and injunctive relief in the form of reinstatement to the position of candidate paramedic with the Fire Department. Although Hughes cannot recover damages, the Tort Immunity Act does not prevent Hughes from seeking this injunctive relief.

### 2. Negligence

We turn now to the sufficiency of Hughes' negligence claims. Although we are doubtful that Hughes will be able to maintain this claim at the summary judgment stage, we are not prepared to dismiss his claim at this juncture. Neither party has briefed the issue of whether the City or Dr. Russell owed a duty of care to apply the scientifically accepted standard in testing for opiates. Considering the limited facts currently before the Court in the light most favorable to Hughes, we cannot foreclose the possibility that such a duty exists. We further find that Hughes has stated a claim for negligence against Dr. Russell by claiming that Hughes suffered damages as a result of Dr. Russell's breach of his duty to conduct a thorough review of Hughes' positive drug test results in accordance with known and accepted scientific standards. We therefore deny Dr. Russell and the

City's motion to dismiss counts VII and IX, but hold that Hughes may only recover injunctive relief on count VII.

### 3. Tortuous Interference with Employment Contract

In the final count of his complaint, Hughes alleges that Dr. Russell is liable for tortuous interference with employment contract for reviewing and reporting a positive opiate drug test contrary to known scientific standards with knowledge that such a report could cause Hughes to lose his position with the Fire Department. Under Illinois law, tortuous interference requires (1) a reasonable expectation of continued employment; (2) the defendants' knowledge of the business relationship; (3) the defendant's intentional interference inducing a breach by a party to the contract; and (4) damages. *See Marczak v. Drexel Nat. Bank*, 542 N.E.2d 787, 790 (Ill. App. Ct. 1989); *accord Stafford v. Puro*, 63 F.3d 1436, 1441 (7th Cir. 1995). Hughes' complaint does not allege the first and third elements necessary for a claim of tortuous interference. Hughes has not alleged that he had a reasonable expectation of continued employment with the Fire Department. Indeed, as a candidate paramedic Hughes was subject to random drug testing and termination without access to the Department's grievance procedures. *See Cavalieri-Conway v. State of California Bd. of Equalization*, 142 F.3d 429 (7th Cir. 1998)(unpublished)(plaintiff could not "establish intentional interference [with employment relationship] because she had no reasonable expectation of continued employment: she was only a probationary employee"). Furthermore, Hughes has not alleged that Dr. Russell intentionally induced the City to breach an employment contract between Hughes and the Department. Hughes has not even alleged the existence of such a contract let alone pointed to a breach by the City. We therefore grant the City's motion to dismiss count XI against Dr. Russell.

## IV. Conclusion

For the forgoing reasons we grant the City's motion to dismiss counts I, II, III, and IV against the City of Chicago. We deny the City's motion as to count VII, but hold that Hughes may recover injunctive relief only. We deny the motion to dismiss count IX against Dr. Russell. We grant the motion to dismiss count XI. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: 7/1/03