# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7267 | **DATE** | 2/27/2004 |
| **CASE TITLE** | David Hughes vs. City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We dismiss the remaining claims in Hughes' complaint without prejudice. Because we decide now that we have no subject matter jurisdiction over the case, we withdraw our referral order and dismiss as moot both Defendant's motion to strike (57-1) and defendant's motion for summary judgment (25-1). Plaintiff's motion for decision (65-1) is moot. The status hearing and for filing of the joint pretrial order set for 7/15/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 66 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/27/2004 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF CHICAGO, an Illinois municipal ) | Case No. 02 C 7267 |
| corporation; QUEST DIAGNOSTICS, INC., a ) | |
| New Jersey corporation; and DR. HUGH ) | |
| RUSSELL, in his individual capacity and official ) | |
| capacity as Medical Review Officer of the Chicago ) | |
| Fire Department, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff David Hughes' complaint against Defendants City of Chicago ("City"), Quest Diagnostics, Inc. ("Quest"), and Dr. Hugh Russell raises various claims relating to a positive drug test that ultimately led to Hughes' termination from the Chicago Fire Department. For the reasons set forth below, we dismiss the case in its entirety.[1]

## BACKGROUND

In 2001, the Chicago Fire Department hired Plaintiff David Hughes as a candidate paramedic. Hughes' employment contract required him to submit to random drug testing and provided that he could be terminated if any of his drug tests yielded a positive result.

---

[1] Quest brought a motion for summary judgment on May 22, 2003. On November 17, 2003, Quest also filed a Motion to Strike certain documents submitted by Hughes in his response to the summary judgment motion (Hughes had filed his response on November 7, 2003 after receiving several extensions from this Court). We originally referred the Motion to Strike to Magistrate Judge Michael T. Mason. Because we decide now that we have no subject matter jurisdiction over the case, we withdraw our referral order and dismiss as moot both the Motion to Strike and the Motion for Summary Judgment.



Defendant Quest Diagnostics is a corporation that contracts with the Chicago Fire Department to perform laboratory analysis of drug test samples submitted by fire department employees. In September 2001, Hughes provided a urine sample which was submitted to Quest for testing. Quest conducted two tests on the sample, both of which reflected that Hughes' morphine opiate level was 481 ng/ml, slightly above the 300 ng/ml cut off level set by the Chicago Fire Department. Defendant Dr. Russell, the Medical Review Officer for the Chicago Fire Department, reviewed and confirmed the results of Quest's test report. As a result of the positive tests, Hughes was fired from his candidate paramedic position on October 9, 2001. Hughes responded to his termination with the present action.

The central focus of Hughes' eleven count complaint is the cut off level that the defendants used in testing for the presence of opiates in Hughes' sample. The parties agree that the actual testing of the sample was done with scientific precision; there are no questions surrounding chain of custody, the types of procedures used to perform the tests, or the accuracy of the 481 ng/ml result obtained. Rather, Hughes argues that the defendants' use of the 300 ng/ml cut off level for opiates was unacceptably low and contrary to scientific standards.

It is widely accepted that drug tests can yield false positive results for low levels of opiates and codeine if the person being tested has recently ingested poppy seeds or some (perfectly legal) prescription drugs. *See* David W. Lockhard, *Protecting Medical Laboratories From Tort Liability for Drug Testing*, 17 J. Legal Med. 427 (1996). For that reason, the federal government requires its employees to be tested using a 2,000 ng/ml cut off level. 49 C.F.R. § 40.87. The question presented in this case is whether the City of Chicago, the doctor who reviewed the test results, and the corporation which performed the testing can be held liable for their decision to treat Hughes' 481 ng/ml result as positive for opiates rather than adhering to the much higher cut off levels set by the

federal government and commonly used by other employers. Hughes also claims that the parties owed him a duty to: 1) warn him that eating certain foods could produce a false positive result; and 2) conduct further, more exacting tests that would have revealed whether his positive test was actually the result of illicit opiates.

## ANALYSIS

Subject matter jurisdiction was originally premised on Hughes' federal claims, including his allegations that the City had violated his Fourth Amendment right to be free from search and seizure (Count I), his Fourteenth Amendment right to due process under the law (Count II), and his Fourteenth Amendment right to equal protection under the law (Count III).[2] Hughes' complaint also raised two Illinois state law claims against the defendants, including negligence and tortious interference with an employment contract.[3] Jurisdiction over the state law claims was premised on 28 U.S.C. § 1367, which allows a federal court to assert supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

On July 2, 2003, we dismissed all three of Hughes' federal causes of action as well as his state law tortious interference claim against Dr. Russell. However, we allowed Hughes to proceed with his common law negligence claims against the City, Dr. Russell, and Quest. Having dismissed

---

[2] In his complaint, Hughes also alleges that diversity could be a basis for federal jurisdiction. *See* 28 U.S.C. § 1332. We disagree. It is black letter law that, in order for jurisdiction to be founded upon diversity, no plaintiff may be a citizen of the same state as any of the defendants. *See Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 315-16 (7th Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). The plaintiff in this case is a citizen of Illinois and two of the three defendants are also Illinois citizens. Diversity of citizenship therefore does not confer federal jurisdiction in this case.

[3] In addition, Hughes brought two counts that it termed "deliberate indifference." As we explained in our opinion of July 2, 2003, deliberate indifference is not a cause of action but a heightened standard for determining whether state actors are liable for violating a plaintiff's constitutional rights.

3

all of Hughes' federal counts, the issue now before us is whether we should continue to assert supplemental jurisdiction over the state law matters. Although district courts have considerable discretion in this context, the general presumption in the Seventh Circuit is that a court should dismiss without prejudice supplemental state law claims once all federal claims have been eliminated prior to trial. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). There are, however, several factors that a court should consider before taking such a step, including "considerations of judicial economy, convenience and fairness to litigants" as well as the novelty or complexity of the issues presented by the state law claims. *United Mine Workers*, 383 U.S. at 726.

Pursuant to 28 U.S.C. § 1367(c), a federal court may decline supplemental jurisdiction over a claim that "raises a novel or complex issue of state law." *See also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001) (upholding a district court's decision to dismiss state law claims where the claims were "complex" and presented "undecided legal issues, best resolved by the Illinois state courts") (quoting district court); *see also United Mine Workers*, 383 U.S. at 726 ("[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). We must therefore consider whether Hughes' remaining negligence claims require a straightforward application of Illinois law or whether they present issues that have not been directly ruled upon by Illinois courts.

To state a claim for negligence under Illinois law, a plaintiff must establish "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting

4

from the breach." *DiBenedetto v. Flora Transp.*, 605 N.E.2d 571, 573 (Ill. 1992). In this case, the central question is whether each of the individual defendants owed Hughes a duty of care to: 1) follow scientifically accepted standards in setting opiate cut off levels; 2) warn Hughes about the possibility that certain foods could result in a positive test; or 3) conduct more sophisticated tests to confirm the presence of illicit drugs in Hughes' sample. None of these questions have been directly ruled upon by any Illinois court.

The most closely analogous case is *Stinson v. Physicians Immediate Care, Ltd.*, in which an Illinois Appellate Court held that a testing facility owed a duty of care to perform drug tests in a reasonably competent manner. 646 N.E.2d 930 (Ill. App. Ct. 1995). That case dealt with a situation in which the laboratory had botched the technical analysis of the sample by failing to use "routinely followed precautionary procedures." *Id.* at 931. Thus, had the testing facility in this case (Quest) mixed up several samples or used unsterile equipment to perform the test, Illinois law indicates that Hughes could be successful in his negligence suit, at least with respect to Quest. However, Hughes does not allege negligence in the actual processing of his sample. Rather, he alleges negligence in the way the sample results (which he admits were technically accurate) were interpreted, in the amount of information given to him before the test, and in the failure to conduct a second type of test. Nor does Hughes allege negligence against the testing facility alone (as was the case in *Stinson*); he also argues that the City and Dr. Russell owed him a duty of care in interpreting his test results. In essence, Hughes is requesting that this court extend the duty conferred by the Illinois Appellate Court in *Stinson* to fit the facts of his case.

Illinois courts have explained that, "[i]n considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant."

*Gouge v. Central Illinois Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991) (citations omitted). The present case would require us to perform this balancing act with respect to each of the three allegedly negligent actions as performed by each of the three named defendants, attempting to predict the outcome that the Illinois courts would reach. All of those inquiries would be conducted with very little guidance from Illinois courts. Without such specific guidance, we believe that it would be imprudent to assert supplemental jurisdiction over Hughes' state law claims, the only remaining claims in this case.

## CONCLUSION

For the foregoing reasons, we dismiss the remaining claims in Hughes' complaint without prejudice. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: 2/27/04